# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**WILLIAM S. FRANKEL, IV**
Wilkinson, Goeller, Modesitt,
  Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CURTIS L. BASS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  84A01-1110-CR-473 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause Nos. 84D01-1001-FB-291
84D01-0912-FB-3885

**July 18, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Curtis L. Bass ("Bass") challenges the ten-year sentence imposed upon his plea of guilty to two counts of Burglary, as Class B felonies, and also appeals a subsequent order revoking his community corrections placement and committing him to the Indiana Department of Correction ("the DOC") for six years. We affirm.

**Issues**

Bass presents three issues for review:

I.     Whether his advisory sentence is inappropriate;
II.    Whether the trial court admitted urinalysis reports in violation of Bass's due process rights as a probationer; and
III.   Whether the revocation is supported by sufficient evidence.

**Facts and Procedural History**

On August 3, 2011, Bass pled guilty to two counts of Burglary. On August 19, 2011, he was given concurrent sentences of ten years, with four years suspended to formal probation and six years to be served in direct placement to community corrections or in-home detention. Subsequently, Bass was appointed a public defender to perfect an appeal of his sentence.

On September 22, 2011, the State filed a Petition to Revoke Direct Placement, alleging that Bass had, on September 8, 2011, tested positive for methamphetamine. On October 12, 2011, Bass was granted permission to file a belated notice of appeal addressing the propriety of his sentence. On October 18, 2011, the trial court conducted a hearing on the placement revocation petition. Following the hearing, Bass's probation and placement were revoked and he was ordered to serve six years of his sentence in the DOC. On October 31,

2011, Bass filed an Amended Notice of Appeal to include a challenge to the revocation.

**Discussion and Decision**

I.  Sentence

A person who commits a Class B felony has a sentencing range of between six and twenty years, with the advisory sentence being ten years.  Ind. Code § 35-50-2-5.  Bass received two advisory sentences, to be served concurrently.  Four years were suspended to probation.

Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008).  A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'"  Anglemyer v. State, 868 N.E.2d 482, 494 (Ind. 2007) (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The nature of Bass's offenses is that he burglarized two homes.  From one home, that of a deployed soldier, Bass stole at least forty guns and ammunition.  The stolen guns had an estimated value of over $10,000.  Some of the guns were then traded for drugs, thereby placing weapons in the hands of drug dealers.  The second burglary involved the violation of the home of a family friend.

3

As for the character of the offender, Bass pled guilty, which reflects favorably on his character. See Scheckel v. State, 655 N.E.2d 506, 511 (Ind. 1995) ("[T]he fact that [the defendant] pled guilty demonstrates his acceptance of responsibility for the crime and at least partially confirms the mitigating evidence regarding his character"). However, he also received a benefit, in that two other charges were dismissed with prejudice. Prior to sentencing, Bass had sought substance abuse treatment and had cooperated with the Department of Child Services to regain custody of his children. He testified that he had, at the time of sentencing, been clean of drugs for eighteen months.

Bass has a criminal history, commencing in 1991, which includes two prior felony convictions and three misdemeanor convictions. He was on probation for a domestic battery conviction when he committed the present offenses. He has a long history of substance abuse and committed the instant crimes to fund his illegal drug use.

In light of the nature of the offenses and the character of the offender, we do not find Bass's advisory sentences, with four years suspended, to be inappropriate.

## II. Admission of Evidence-Probation Revocation

Bass contends that the trial court improperly admitted hearsay evidence in determining whether he had violated a term of his probation and placement. Over Bass's objection, a community corrections case manager was permitted to testify that Bass had "tested positive" for methamphetamine. (Tr. 5.) Contemporaneously, the trial court admitted as exhibits two toxicology reports from Redwood Toxicology Laboratory indicating that Bass's screens of September 8 and 20, 2011 had each shown "positive" results for amphetamines, specifically

4

methamphetamines. (St. Ex. 2-3.) Bass asserts that the documentary evidence was not substantially trustworthy so as to satisfy his due process rights as a probationer.[1]

A probation revocation hearing is not equivalent to an adversarial criminal proceeding. Cox v. State, 706 N.E.2d 547, 550 (Ind. 1999). However, the Due Process Clause applies to probation revocation proceedings, and the due process rights of a probationer include: "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body[.]" Id. at 549.

Because probation revocation procedures "are to be flexible, strict rules of evidence do not apply." Id. The scope of the right to confrontation as defined in Crawford v. Washington, 541 U.S. 36 (2004), does not apply in such proceedings. Reyes v. State, 868 N.E.2d 438, 440 n.1 (Ind. 2007). In Cox, the Court held that judges could consider hearsay "bearing some substantial indicia of reliability," but declined to adopt a particular approach to determining that reliability. 706 N.E.2d at 551. Subsequently, in Reyes, the Indiana Supreme Court adopted a "substantial trustworthiness" test. 868 N.E.2d at 440.

In Reyes, the State had filed a notice of probation violation alleging that Reyes had violated his probation by testing positive for cocaine. Id. at 439. At a hearing, the State submitted the affidavit of the scientific director of the laboratory that conducted the urinalysis of Reyes's sample, together with related documents. Id. The director did not testify at the hearing, and Reyes objected to the affidavits as hearsay and claimed that the admission of the

---

[1] Bass had not, as a condition of his in-home placement, agreed that toxicology results obtained by a probation officer would be admissible in revocation proceedings.

5

affidavit without live testimony would violate his right of confrontation. Id. The trial court admitted the affidavits and revoked Reyes's probation. Id. The probation revocation was affirmed by the Indiana Supreme Court. Id. at 443.

In reaching its decision, the Court observed that hearsay evidence may not be admitted "willy-nilly." Id. at 440. However, although there may sometimes be no adequate alternative to live testimony, due process does not prohibit substitutes where appropriate, including affidavits, depositions, and documentary evidence. Id. (citing Gagnon v. Scarpelli, 411 U.S. 778, 782-83 n.5 (1973)). Where the State has shown that the hearsay "bears substantial guarantees of trustworthiness," the State need not additionally show good cause for not producing live testimony. Id. at 441. The trial court must evaluate the reliability of the hearsay evidence and, ideally, the trial court should explain on the record why the hearsay is reliable and why that reliability is substantial enough to supply good cause for not producing live witnesses. Id. at 442.

Here, community corrections case manager Cierra Fox ("Fox") testified that drug screens were administered to Bass pursuant to the rules of the in-home detention program. Fox explained the procedure implemented: Bass had urinated in a container in the presence of a correctional officer, the cup was security sealed and labeled, and it was then placed in a bag to be sent to Redwood Toxicology for testing.

According to Fox, similar tests were administered by her department and sent to Redwood Toxicology between twenty and sixty times per week. Reports were generated by Redwood Toxicology at the request of Vigo County Community Corrections; the reports

were then maintained as community corrections records. Fox stated that, to the best of her knowledge, Redwood Toxicology was a certified lab; however, she lacked personal knowledge of its certification.

The trial court concluded that a "regular urinalysis report prepared by a company whose professional business it is to conduct such tests" was sufficiently trustworthy. (App. 105.) Bass argues that the trial court's conclusion is erroneous, because the hearsay evidence in his case falls short of the level of trustworthiness of that submitted in Reyes. Bass observes that the affidavit at issue in Reyes included the opinion of the director that "Reyes would have had to use cocaine some time in the 72 hours prior to collection." Id. at 439.

According to Bass, his case is distinguishable from that of Reyes in that (1) "no affidavits from anyone at the laboratory were offered" and (2) "the test results do not state that Bass used methamphetamine and the only sworn testimony came from someone who knows nothing about the laboratory's procedures and reliability." Appellant's Brief at 12. Thus, Bass implicitly argues that the "substantial trustworthiness" test of Reyes requires an affidavit and a scientific opinion validating drug screen results. We discern no such requirement in Reyes.

Moreover, a panel of this Court has recently concluded that the record of probation revocation proceedings supported a determination of substantial trustworthiness of "a routine report demonstrating that [appellant] had tested positive for marijuana." Williams v. State, 937 N.E.2d 930, 934 (Ind. Ct. App. 2010). The urinalysis had been performed by the president of the company handling Williams's home detention, the report contained a signed

chain of custody signed by Williams and the president, and an employee of the home detention company had testified and explained the report and the date and time of sample collection. Id.; see also Holmes v. State, 923 N.E.2d 479, 484 (Ind. Ct. App. 2010) (substantial trustworthiness existed for urinalysis report where the toxicologist affirmed under penalty of perjury that the sample was received under controlled conditions and processed in accordance with laboratory standard operating procedures and the scientist affirmed that the sample was handled in accordance with applicable requirements).

The absence of an affidavit from a toxicologist or laboratory employee does not render drug test results inadmissible in probation revocation proceedings where there is otherwise a substantial guarantee of trustworthiness. Here, the substantial guarantee of trustworthiness was provided by a case manager's testimony. She was familiar with and described the urinalysis collection and chain of custody procedures; she testified that the laboratory which had generated Bass's urinalysis report was the laboratory used to generate twenty to sixty reports per week for Vigo County Community Corrections. The reports identify the collecting and processing individuals, and contain detailed information about the testing time. Each report is accompanied by a document signed by Bass and by the collecting officer, acknowledging that the sample was sealed and secured in Bass's presence. We conclude that the trial court did not contravene Bass's due process rights when it admitted the State's exhibits.

## II.Sufficiency of the Evidence to Support Revocation

A reviewing court treats a petition to revoke a placement in a community corrections

8

program the same as a petition to revoke probation. Cox v. State, 706 N.E.2d at 549. Community corrections is "a program consisting of residential and work release, electronic monitoring, day treatment, or day reporting[.]" Ind. Code § 35-38-2.6-2. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Monroe v. State, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). Rather, such placement is a "matter of grace" and a "conditional liberty that is a favor, not a right." Million v. State, 646 N.E.2d 998, 1002 (Ind. Ct. App. 1995).

Probation may be revoked for violation of a probation condition. Runyon v. State, 939 N.E.2d 613, 616 (Ind. 2010). The State must prove the violation by a preponderance of the evidence. Id. If a defendant violates the terms of his placement in community corrections, the court may, after a hearing:

    (1)    Change the terms of the placement.
    (2)    Continue the placement.
    (3)    Revoke the placement and commit the person to the department of
           correction for the remainder of the person's sentence.

Ind. Code § 35-38-2.6-5.

The State presented evidence that Bass twice tested positive for methamphetamines. The State established that Bass violated a term of his probation and placement – he did not remain law-abiding and drug-free. Pursuant to Indiana Code Section 35-38-2.6-5(3), the trial court had the option of revoking Bass's placement and committing him to the DOC to serve a portion of his sentence. The probation revocation decision is supported by sufficient evidence.

**Conclusion**

9

Bass has not persuaded us that his ten-year aggregate sentence, with four years suspended to probation, is inappropriate. Bass was not denied due process by the admission of hearsay evidence at the placement revocation hearing, and the decision to revoke Bass's probation and order a portion of his sentence executed is supported by sufficient evidence.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.