Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 26 2013, 5:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEPHANIE MURRY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1301-CR-39 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause Nos. 49G01-1112-FC-88928, 49G01-1201-CM-1201

**August 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Stephanie Murry ("Murry") appeals the revocation of her placement in Marion County Community Corrections, contending that the trial court abused its discretion in ordering her to serve the balance of her sentence in the Department of Correction ("DOC").

We affirm.

## FACTS AND PROCEDURAL HISTORY

In November 2012, Murry pleaded guilty to forgery[1] as a Class C felony and criminal mischief as a Class A misdemeanor[2] under two separate cause numbers. The trial court sentenced her to four years executed on Marion County Community Corrections ("MCCC") work release, to be followed by one year on probation. Murry began her work-release placement on November 30, 2012 at the John P. Craine House ("Craine House") in Indianapolis.

On December 12, 2012, around 8:30 a.m., Murry was driven to the City-County Building for a routine drug screen. When she was unable to produce enough urine for an accurate test, she returned to Craine House, where staff kept a supply of testing cups for drug tests. Staff asked Murry to provide a sample, but, when she did, the sample appeared to be a diluted mixture of urine and water, and was insufficient to register a result. At 12:31 p.m., staff issued Murry a pass to leave Craine House. The conditions of the pass were that Murry go to the City-County Building for a third attempt at a drug test, and that she thereafter report to Methodist Hospital ("Methodist") to address breathing

---

[1] *See* Ind. Code § 35-43-5-2.

[2] *See* Ind. Code § 35-43-1-2.

2

problems and also obtain a refill of her asthma medication. Murry was instructed to call Craine House every hour until she returned. Murry left on foot.

As of 5:00 p.m., Murry had not yet called Craine House. Sometime thereafter, Patricia Gaither ("Gaither"), a correctional family officer at Craine House, called Methodist to inquire about Murry. Methodist staff informed Gaither that Murry was not at Methodist. Murry eventually called Craine House around 7:15 p.m. and claimed that she had been at Methodist for about two hours. After receiving Murry's call, Gaither called Methodist around 8:00 p.m. and learned that Murry had not arrived until 7:31 p.m.

Murry returned to Craine House between 9:15 p.m. and 9:30 p.m. She had a hospital wrist band and a prescription, but no admittance and discharge papers. Upon arriving at Craine House, Murry handed Gaither a flyer from Methodist, which had the name of a Methodist employee written on it. Also written on the flyer was a statement that Murry had been at Methodist from 3:15 p.m. until 8:30 p.m. After receiving the flyer, Gaither again called Methodist and spoke with the listed employee. That employee stated that she had neither written her name on the flyer nor given Murry her name. Gaither then spoke with another Methodist employee, who informed her that Murry had not arrived at Methodist until 7:31 p.m. and that she had left shortly before 8:30 p.m.

A notice of community corrections violation was filed against Murry. The notice, in its amended form, indicated that Murry had violated the conditions of an approved pass and that she had failed to submit to a drug screen. A hearing was held, which included testimony from Murry and Gaither, and the trial court found both of the allegations against Murry were true. Murry requested to be returned to Craine House on

3

strict compliance, but the trial court revoked Murry's MCCC placement and ordered her to serve the balance of her sentence (992 days) in DOC. Murry now appeals.

## DISCUSSION AND DECISION

When a person is found to have violated terms of community corrections, the trial court may, following a hearing: (1) change the terms of the placement; (2) continue the placement; or (3) revoke the placement and commit the defendant to DOC for the remainder of her sentence. *See* Ind. Code § 35-38-2.6-5. For the purposes of reviewing a revocation, we have determined that the difference between community corrections and probation is insignificant. *Perry v.* State, 710 N.E.2d 219, 220-21 (Ind. Ct. App. 1999). We review a trial court's revocation of either program for an abuse of discretion. *Brown v. State*, 947 N.E.2d 486, 489 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion will be found only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Hardy v. State*, 975 N.E.2d 833, 835 (Ind. Ct. App. 2012).

Murry does not dispute that she violated community corrections terms; rather, Murry challenges the trial court's decision to order her to DOC. She argues that, although she was warned by the court, that violations of her program could result in revocation, our Supreme Court disfavors automatic revocation. *See Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008) ("[T]he very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect.") Murry points to a recent case, where our Supreme Court observed that "the selection of an appropriate sanction will depend upon the severity of the defendant's probation violation . . . ."

4

*Heaton v. State*, 984 N.E.2d 614, 618 (Ind. 2013). There, the court indicated that the mere technicality of certain violations might warrant a less severe sanction, but that such a determination is better exercised by the trial court. *Id.*; *see also Ripps v. State*, 968 N.E.2d 323, 328 (Ind. Ct. App. 2012) (finding revocation unreasonable where defendant "was attempting to adhere to his probation conditions" and "was taking steps to correct the violation" to which he admitted). Murry contends that because she did eventually return to Craine House, despite hours of being unaccounted for, the nature of her violation warrants a less severe sanction.

Consistent with our standard of review, we do not find that the trial court erred in ordering Murry to serve the balance of her sentence in DOC. We have long observed that a "defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, such placement is a matter of grace and a conditional liberty that is a favor, not a right." *Bass v. State*, 974 N.E.2d 482, 488 (Ind. Ct. App. 2012). In making its determination to revoke Murry's placement with MCCC, the trial court observed that Murry's violations occurred quickly, just fourteen days after she entered the program. *Tr.* at 27-28. Although Murry notes that she had elimination problems that affected her ability to provide a urine sample, Murry nevertheless failed to comply with the conditions of her pass to leave Craine House. Murry failed to follow the conditions of her pass, lied about her arrival time at Methodist, and submitted false documents to corroborate her story.

Because Murry's violations rose above mere technicalities, it was reasonable for the trial court to conclude that such violations, viewed in context with Murry's

underlying crime of a fraudulent nature, warranted a sentence with fewer liberties. The trial court did not abuse its discretion in ordering Murry to DOC.

Affirmed.

ROBB, C.J., and RILEY, J., concur.